## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

NORA ANN BETH                                                          PLAINTIFF

v.                          CASE NO. _____

TRUMBULL INSURANCE COMPANY                        DEFENDANT

---

### CLASS ACTION COMPLAINT

---

### I. INTRODUCTION

1.      Nora Ann Beth insured her 2005 Cadillac DeVille with Trumbull Insurance Company ("Hartford"). Beth was involved in a vehicle collision, and Hartford declared the vehicle a total loss. As it does with all its total loss claims, Hartford used a Mitchell Valuation Report ("Mitchell Report") to determine the amount it would pay on the claim. Based on the report, Hartford valued the actual cash value or replacement cost of Beth's vehicle at $6,530.84. This is less than the actual cash value of the vehicle and less than what was required to replace Beth's vehicle with another of like kind and quality.

2.    Hartford's use of the Mitchell Report to value total loss claims violates its contracts with its insureds and Arkansas law. Hartford is required to calculate actual cash value through either: (a) the cost of a specific, comparable replacement automobile, or (b) using one of two or more quotations obtained from two or more qualified dealers or appraisal services located within the local market area. Instead of following Arkansas law, Hartford uses the Mitchell Report to cheat their policyholders and increase their profits. The Mitchell Report systematically undervalues the insured's vehicles, resulting in a payment of less than the actual cash value for all total loss claims, saving Hartford millions of dollars each year at the expense of its insureds.

3.    Beth brings this suit on behalf of herself and others similarly situated to recover the difference between the actual cash value of her vehicle and what she was paid, punitive damages, costs, and attorneys' fees. She also asks the Court to declare that the use of the Mitchell Report to adjust first-party insurance claims violates Arkansas law and to permanently enjoin its use.

## II. PARTIES, JURISDICTION, AND VENUE

4.   Plaintiff Nora Ann Beth is a resident and citizen of Pulaski County, Arkansas. At all times relevant to this Complaint, she had a motor vehicle insurance policy with Hartford and had a total-loss claim.

5.   Defendant Turnbull Insurance Company is incorporated and has its principal place of business in Connecticut. It is licensed to do business in Arkansas and its registered agent for service is The Corporation Company, located at 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

6.   This Court has subject matter jurisdiction pursuant to Ark. Const. amend. 80, § 6 and Ark. Code Ann. § 16-13-201.

7.   Venue is proper in this Court because Plaintiff resided in Pulaski County at the time of the events which gave rise to this cause of action, and the accident occurred in Pulaski County. Ark. Code Ann. § 16-60-101.

## III. FACTUAL ALLEGATIONS

8.   Beth was involved in a motor vehicle accident in March 2016, which resulted in substantial damage to 2005 Cadillac DeVille. Beth had an insurance policy with Hartford, and she filed a claim regarding the property damage. Hartford determined that the vehicle was a total loss.

9.      Beth's insurance policy with Hartford contained a clause providing for the adjustment and settlement of total loss claims based on actual cash value or replacement with another of like kind or quality. Upon information and belief, this is Hartford's standard automobile insurance policy issued to insureds in the state of Arkansas.

10.     Beth has been unable to locate a copy of her policy to attach to this complaint. She requested a copy from Hartford, but Hartford did not provide a full copy of her policy as requested. As a result, Beth has good cause not to attach a copy of the policy to this pleading. Ark. R. Civ. P. 10(d).

11.     To adjust Beth's claim, Hartford used a report from a third-party corporation, Mitchell International. The report is titled "Mitchell Vehicle Valuation Report" (the "Mitchell Report"). The Mitchell Report is sold almost solely to insurance companies, and it is marketed as reducing the costs of total value settlements. Upon information and belief, Hartford uses the Mitchell Report to calculate its offers of all total loss claims.

12.     Hartford presented the Mitchell Report to Beth as representing the "actual cash value" of the vehicle, and, based on the Mitchell Report, Hartford placed the "market value" of the vehicle at $6,530.84. *See* Mitchell Report, attached as Exhibit "A."

13.     The Mitchell Report systematically undervalues vehicles by making a series of arbitrary and unexplained adjustments to the vehicles contained in the report. For instance, the Mitchell Report used three vehicle listings and one "franchise sale" to compute the amount Hartford would pay on Beth's claim. Two of the vehicle listings and the "franchise sale" took place more than 50 miles from Beth's home, meaning those vehicles are not "in the local area." Moreover, the Mitchell Report does not explain the "franchise sale."

14.     The Mitchell Report automatically discounts any vehicle listed for sale by over 11.5% for "consumer purchasing behavior (negotiating a different price than the listed price)." The Mitchell Report does not explain the basis for the reduction, nor is the reduction moored in reality. The reduction achieves the insurance company's purpose to save money on total loss claims.

15.     The Mitchell Report makes other unexplained adjustments to the vehicles it uses to set the market value. For example, although all four vehicles were listed as "Base" vehicles, the price of three of the comparison vehicles were adjusted downward vis a vis Beth's vehicle for "Equipment Group." Adjustments were also made for mileage and other options, but the

Page 5 of 19

Mitchell Report does not contain any information to explain the adjustment or support the amount of the adjustments.

16.   The effect of these adjustments is to reduce payment on the claim to an amount less than the actual cash value and far less than is required to purchase a replacement vehicle of like kind and quality.

17.   Hartford knows that the Mitchell Report undervalues vehicles. Despite knowing that the Mitchell Report undervalues vehicles, Hartford continues to use it to determine the amount to pay claimants.

18.   Arkansas law requires that Hartford, when adjusting or settling first party automobile total losses, either provide a replacement vehicle, provide a cash settlement based on a specific replacement vehicle if one is available in the local market area, or use "one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is located in the local market area." Ark. Ins. Regulation 43, § 10(a)(2). If the insurer deviates from one of those methods, the deviation must be supported by documentation giving particulars of the automobiles condition, and "[a]ny deductions from such cost, including deduction for salvage, must be measurable, discernable, itemized, and specified as to

dollar amount and shall be appropriate in amount." Ark. Ins. R. 43, § 10(a)(3). Further, "[t]She basis for such settlement shall be fully explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3).

19.     Mitchell International, Inc. is not a qualified dealer or appraisal service located in Pulaski County, Arkansas.

20.     Hartford did not provide documentation about why it needed to deviate from one of the two approved methods for Beth's vehicle, and there was nothing unique about Beth's vehicle that would justify deviating from the methods approved under Arkansas law.

21.     Hartford knows or should know that using the Mitchell Report to determine actual cash value violates Arkansas law. Despite knowing that the practice is unlawful, Hartford uses the practices because it saves Hartford millions of dollars. Hartford can achieve this savings because the cost of litigating the value of a property damage claim exceeds the difference in value between the Mitchell Report and the actual cash value of the vehicle.

## IV. CLASS ACTION ALLEGATIONS

22.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

23.    Plaintiff brings this as a class action under Rule 23 of the *Arkansas Rules of Civil Procedure*.

24.    Members of the putative class are so numerous that joinder of all such members is impracticable. The exact size of the putative class is unknown, but may be easily determined from records maintained by Hartford.

25.    There are common questions of law and fact applicable to the putative class with respect to liability, relief, and anticipated affirmative defenses. Common questions of law and fact include:

a.    Whether Hartford has a practice of using the Mitchell Report to determine actual cash value or replacement cost;

b.    Whether Regulation § 43, § 10 is incorporated into the terms of Hartford's automobile insurance policies;

c.    Whether Hartford's practices violated Regulation 43, § 10;

d.    Whether Mitchell International, Inc. is a qualified dealer or appraiser in the local market area; and

e.    By what percentage does Mitchell systematically undervalue cars vis a vis their actual cash value;

26.    Plaintiff's claims are typical of the putative class. Like all other putative class members, Plaintiff had a total loss automobile claim that was settled and adjusted using the Mitchell Report.

27.    Plaintiff will fairly and adequately protect the interest of the putative class. She has no conflicts with putative class members and has suffered the same injury as members of the putative class.

28.    Plaintiff's counsel possesses the requisite resources and experience in class action litigation to adequately represent Plaintiff and the putative class members in prosecuting the claims here.

29.    The questions of law and fact common to Plaintiff and members of the putative class predominate over any question affecting only individual class members. These common questions concerning Hartford's wrongdoing must be resolved for all class members.

30.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Hartford engages in a common business practice of using the Mitchell Report to adjust total loss claims, which is alleged to violate Arkansas law, and it is not unfair to require Hartford to litigate its business practice on a class-wide basis. Moreover, class members' individual damage claims are too small to make

individual litigation an economically viable alternative. But despite the small size of any one individual's claims standing along, the aggregate value of the practice is substantial.

31.    Plaintiff's class claims are appropriate to proceed under the Arkansas Deceptive Trade Practices Act. Act 986 of 2017 – which purports to prohibit most private class actions under the Act – is an unconstitutional intrusion into the Arkansas Supreme Court's exclusive authority to "prescribe the rules of pleading, practice and procedure for all courts." Ark. Const. Amend. 80, § 3; *see also Johnson v. Rockwell Automation*, 2009 Ark. 241, 308 S.W.3d 135 (holding two provisions of Arkansas Civil Justice Reform Act were unconstitutional); *Summerville v. Thrower*, 369 Ark. 231, 253 S.W.3d 415 (2007) (holding statute requiring reasonable cause affidavit was unconstitutional); *Weidrick v. Arnold*, 310 Ark. 138, 835 S.W.2d 843 (1992) (holding statute requiring 60-day notice before filing medical malpractice claim was unconstitutional).

### V. CAUSES OF ACTION
### COUNT I: ARKANSAS DECEPTIVE TRADE PRACTICES ACT

32.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

Page 10 of 19

33. Arkansas law requires that an insurer adjust total loss automobile claims by providing the insured with enough money to purchase a specific comparable replacement vehicle in the local market area, or, if no comparable vehicle is available, using one of two or more quotations from a local dealer or appraiser. Ark. Ins. R. 43, § 10.

34. Hartford adjusts total loss automobile claims by relying on the Mitchell Report, even though Mitchell International, Inc. is not a local dealer or appraiser and even though the report does not provide the insured with sufficient funds to purchase a comparable replacement automobile.

35. Hartford engaged in an unconscionable, false, or deceptive act or practice in business, commerce, or trade when it used the Mitchell Report to adjust Plaintiff's total loss claim. Hartford also used the same unconscionable, false, or deceptive act or practice in using the Mitchell Report to adjust all of its total loss claims in Arkansas. *See* Ark. Code Ann. § 4-88-107(a)(1); *see also* Ark. Ins. R. 43, § 1 (expressly providing that violations of the Insurance Department's regulations regarding unfair claims settlement practices "constitute an unfair or deceptive act or practice in the business of insurance.").

36.   Defendant's conduct proximately caused damage to Plaintiff and putative class members. Plaintiff and putative class members seek compensatory damages in an amount equal to the difference between the amount paid to them to adjust total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

37.   Plaintiff and putative class members justifiably relied on Hartford's representations about the actual cash value of the vehicle.

38.   Hartford knew or ought to have known that its conduct would result in injury to Plaintiff and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Plaintiff and putative class members are entitled to punitive damages.

39.   Plaintiff and the putative class members are entitled to an award of attorneys' fees, costs, and expenses in bringing their Deceptive Trade Practices Act claim.

## COUNT II: FRAUD IN THE INDUCEMENT

40.   Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

41.     Hartford falsely represented that the amount in the Mitchell Report represented the actual cash value of Beth's automobile. Hartford made the same false representation to every other putative class member.

42.     Hartford knew that its representation was false. First, Hartford knew that Arkansas law requires that an insurer use one of the methods identified in Regulation 43 to determine actual cash value and that the Mitchell Report was not a permissible method. Further, Hartford knew that the Mitchell Report systematically generated valuations that were lower than the "actual cash value" that would have resulted had it obtained a valuation from a qualified local dealer or appraiser as required by Arkansas law.

43.     Hartford intended to induce and coerce Plaintiff and putative class members into settling their total loss claims for less than they would have if Hartford had complied with Arkansas law and obtained a quotation from a qualified dealer or appraiser located in the local market area.

44.     Plaintiff and putative class members justifiably relied on Hartford's representation about the actual cash value. Indeed, because the misrepresentation goes to a material matter, reliance is presumed. *Manhattan Credit Co. v. Burns*, 230 Ark. 418, 323 S.W.2d 206 (1959) ("[R]eliance is to be

Page 13 of 19

presumed when, as here, the misrepresentation goes to a material matter.");
*Pickering v. Garrison*, 2009 Ark. App. 107, at *13 ("Reliance is presumed when
the misrepresentation goes to a material matter.").

45.     Hartford's conduct proximately caused damages. Plaintiff and
putative class members suffered damages in an amount equal to the
difference between the amount paid to them to adjust their total loss claims
and the actual cash value of their vehicle computed as required by Arkansas
law.

46.     Defendant knew or ought to have known that its conduct would
result in injury to Plaintiff and putative class members and it continued in
such conduct in reckless disregard of the consequences. As a result, Plaintiff
and putative class members are entitled to punitive damages.

### COUNT III: BAD FAITH

47.     Plaintiff incorporates by reference the preceding paragraphs as
if they were fully set forth herein.

48.     Hartford acted in bad faith to avoid liability under its policy
issued to Beth. Hartford knew that its method of settling total loss claims
violated Arkansas law and would result in a lower payment to Beth than if
Hartford would have obtained a quotation from a qualified local dealer or

Page **14** of **19**

appraiser. Despite this knowledge, Hartford fraudulently presented the Mitchell Report to Beth as representing the "actual cash value" of her vehicle.

49.    Hartford did more than merely refuse to pay a claim. Hartford intentionally violated Arkansas law to save itself money at the expense of its insured. Hartford's conduct was dishonest and oppressive, and was carried out with a state of mind characterized by contempt for its insureds.

50.    Hartford's conduct proximately caused damages. Plaintiff and putative class members suffered damages in an amount equal to the difference between the amount paid to them to adjust total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

51.    Defendant knew or ought to have known that their conduct would result in injury to Plaintiff and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Plaintiff and putative class members are entitled to punitive damages.

## COUNT IV: BREACH OF CONTRACT

52.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

53.     Beth and Hartford entered into a contract. Among other things,
the policy provides for the adjustment and settlement of total losses based
on "actual cash value or replacement with another of like kind or quality."

54.     Arkansas law requires that Hartford either provide a
replacement vehicle, provide a cash settlement based on a specific
replacement vehicle if one is available in the local market area, or use "one
(1) of two (2) or more quotations obtained by the insurer from two (2) or
more qualified dealers or appraisal services located within the local market
area when a comparable automobile is located in the local market area." Ark.
Ins. Regulation 43, § 10(a)(2). If the insurer deviates from this method, it must
provide documentation for the deviation, including giving particulars of the
automobiles condition, and "[a]ny deductions from such cost, including
deduction for salvage, must be measurable, discernable, itemized, and ·
specified as to dollar amount and shall be appropriate in amount." Ark. Ins.
R. 43, § 10(a)(3). Further, "[t]he basis for such settlement shall be fully
explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3). The
provisions of Ark. Ins. R. 43 are incorporated into the insurance contract as
a matter of law. *See First Sec. Bank v. John Doe 1, 2, & 3*, 297 Ark. 254, 257, 760
S.W.2d 863, 865 (1988).

55.   Beth and putative class members did what the contract required of them.

56.   Hartford breached the contracts by using the Mitchell Report instead of using the methods required by Arkansas law.

57.   As a result of Hartford's breach of contract, Plaintiff and putative class members suffered damages in an amount equal to the difference between the amount paid to them to adjust total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

## VI. JURY DEMAND & PRAYER FOR RELIEF

58.   Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

59.   Article 2, § 7 of the Arkansas Constitution provides that "The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy[.]" Further, Article 2, § 13 also guarantees every person a "remedy in the laws for all injuries or wrongs . . . ." Plaintiff demands a remedy in the laws for all injuries and wrongs alleged, and a trial by jury on all issues so triable.

60.     WHEREFORE, Plaintiff respectfully requests this Court:

a.     Certify a class defined as:

> All individuals insured by Hartford under a
> policy issued or effective in Arkansas who: (a)
> had a total loss claim with Hartford; (b) that
> received a settlement calculated using Mitchell
> Report; (c) during the period from March 6, 2014
> to the present.

b.     Appoint Nora Ann Beth as class representative;

c.     Appoint Holleman & Associates, P.A. and Brad Hendricks
Law Firm as class counsel;

d.     Declare that Hartford's practice of using the Mitchell
Report to adjust total loss claims violates Arkansas law;

e.     Enjoin Hartford from using the Mitchell Report to adjust
future total loss claims in the state of Arkansas;

f.     Award her compensatory damages in an amount equal to
the difference between the actual cash value of her vehicle and the
amount Hartford paid;

g.     Award her punitive damages in an amount sufficient to
punish Hartford for its wrongdoing and to deter others from engaging
in similar wrongdoing;

Page 18 of 19

h.   Award Plaintiff all recoverable costs, expenses, and attorneys' fees incurred in prosecuting this action, together with all applicable interest; and

i.   Grant Plaintiff all such further relief deemed just and appropriate.

Respectfully Submitted,

**HOLLEMAN & ASSOCIATES, P.A.**
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

By:  */s/ John Holleman*
John Holleman, ABN 91056
*jholleman@johnholleman.net*
Timothy A. Steadman, ABN 2009113
*tim@johnholleman.net*
Jerry Garner, ABN 2014134
*jerry@johnholleman.net*

&

Lloyd "Tre" Kitchens, ABN 99075
*tkitchens@bradhendricks.com*
**THE BRAD HENDRICKS LAW FIRM**
500 C Pleasant Valley Drive
Little Rock, AR 72227
Telephone (501) 221-0444

Page **19** of **19**





## Vehicle Valuation Report

Prepared for:

Summary

### Claim Information

| | | | |
|---|---|---|---|
| Claim Number: | PAC019730143-01 | Version #: | 1 |
| Policy Number: | 65PHT813519 | Coverage Type of Loss: | COLLISION |
| Insured: | NORMAN & ANN BETH | Loss Date: | 03/31/2016 |
| Address: | 1500 QUAIL RIDGE DR | Reported Date: | 03/31/2016 |
| | ALEXANDER, AR 72002 | Valuation Report Date: | 04/05/2016 20:33:53 |
| Insured Home Phone: | (501) 847-6819 | Valuation Report ID: | 9480910 |

### Vehicle Information

| | | | |
|---|---|---|---|
| Loss Vehicle: | 2005 Cadillac DeVille 4 Door Sedan | Location: | AR 72002 |
| | 4.6L 8 Cyl Gas A FWD | Exterior Color: | |
| VIN: | 1G6KD54Y75U197072 | License Plate: | |
| Mileage: | 92,873 miles | | |
| Title History: | No | | |

### Valuation Summary

| | |
|---|---|
| Base Value: | $6,530.84 |

**Loss Vehicle Adjustments**

| | |
|---|---|
| Condition Adjustment: | $0.00 |
| Prior Damage Adjustment: | $0.00 |
| After Market Parts Adjustment: | $0.00 |
| Refurbishment Adjustment: | $0.00 |
| Title History Adjustment: | $0.00 |
| **Market Value:** | **$6,530.84** |

**Settlement Adjustments**

| | |
|---|---|
| (9.500%, $6,530.84)Tax: | $555.12 |
| Deductible: | -$500.00 |
| Settlement Value: | $6,535.96 |

Title History Comments:

Mitchell WorkCenter
Total Loss

Claim # PAC010739143-31 | Copyright (c) 2011 - Mitchell International. All Rights Reserved. | Page 1

EXHIBIT
A

## Loss Vehicle Detail

Loss vehicle:  2006 Cadillac DeVille  4 Door Sedan 4.6L 8 Cyl Gas A FWD

### Standard Equipment

**Exterior**

| Daytime running lamps | Glass, Solar-Ray tint, light tinted |
|---|---|
| Headlamps, halogen, Tungsten, windshield wiper activated, includes Twilight Sentinel, flash-to-pass and cornering lamps | Mirrors, outside rearview, dual power, heated, folding with turn signal indicators |
| Wipers, intermittent, front | |

**Interior**

| Antenna, integral, front and rear | Armrest, center, front |
|---|---|
| Armrest, center, rear, includes dual cupholders and storage | Climate control, tri-zone automatic, includes individual climate settings for driver, right front passenger and rear passengers, dual-zone front and auxiliary rear airhead control, includes air filtration system |
| Cruise control, electronic with Set and Resume speed, includes a Tap Up in Increments mode cluster | Defogger (rear-window, electric, includes front and side window, auto) Power and front passenger |
| Door locks, power programmable, includes lockout protection | Floormats, carpeted, front and rear |
| Fuel filler door release power | Fuel gauge digital |
| Illuminated entry | Instrumentation, digital, includes speedometer, fuel gauge, coolant temperature and Driver Information Center |
| Keyless entry, remote includes panic button and trunk release | Map pockets, front doors and front seatbacks |
| Mirror, inside rearview, electrochromic (light-sensitive auto dimming), includes compass and OnStar controls | OnStar, 1-year Directions & Connections Service, includes Driving Directions, Information/Convenience Services, RideAssist, Automatic Notification of Air Bag Deployment, Stolen-Vehicle Tracking, Emergency Services, Roadside Assistance, Remote Door Unlock, Remote Horn and Lights, GM Goodwrench Remote Diagnostics, AccidentAssist and Online Concierge. Drivers can also obtain the available voice-activated, hands-free Personal Calling service and Virtual Advisor that provides location-based traffic and weather reports and other personalized information. (Visit www.onstar.com for system information and details.) |
| Reclined seatback, power, windshield and radio to gain operational start, miles in switched off for 10 minutes or until a fluid is opened | Seat, rear pass-through |
| Seats, front leather seating surfaces 40/20/40 split-bench, includes driver and front passenger 10-position power adjusters with articulating head restraints, fold-down inboard armrest | Sound system, ETR AM/FM stereo with CD player, includes seek-and-scan, TheftLock, digital clock and 8-speakers |
| Steering column, tilt-wheel, adjustable | Steering wheel, leather-wrapped |
| Steering wheel, mounted radio controls, includes cruise and temperature controls | Theft-deterrent system, PASS-Key III |
| Tire pressure monitor | Visor, release, power, includes vanity lockout, located in dovetail |
| Visors, illuminated vanity mirrors, driver and front passenger | Windows, power, includes express-down, all and express-up, front and rear passenger lockout |

**Mechanical**

| Alternator/battery 100-amp | Battery, Delco maintenance-free (qs), includes rundown protection |
|---|---|
| Brakes, 4-wheel antilock, 4-wheel disc | Drivetrain, front-wheel drive |
| Exhaust, dual, chrome-plated, stainless | Frame (integral), construction, includes corrosion-resistant coating |
| Fuel capacity, approximate, 18 gallon (68 liters) | Steering, power, magnatraction, variable-assist, rack-and-pinion |
| Suspension, 4-Wheel independent | Tire, spare compact |
| Tires, P225/60R16, Symmetry S-rated, blackwall | Wheels, 16" (40.6 cm) aluminum |

Claim # PACD1E739143-01 | Copyright (c) 2011 - Mitchell International, All Rights Reserved. | Page 2

| Safety |
|---|
| Air to aspirfomalc driver and right front passenger and side-impact driver and right front passenger (LAYyes use a duty belts and proper child restraint), even with air bags. Children also safer when properly secured in a rear seat. See the Owner's Manual for more safety information. | Door locks, anti-security, rear ... |
| Safety belts, 3-point, driver and front passenger, integral with seat (Lap belt only on center front seat.) | Safety belts, 3-point, rear outboard, includes comfort guide and center position lap belt |

## Loss Vehicle Base Value

Loss vehicle:    2005 Cadillac DeVille 4 Door Sedan 4.6L 8 Cyl Gas A FWD

### Comparable Vehicle Information

Search Radius used for this valuation:                150 miles from loss vehicle zip/postal code.
Typical Mileage for this vehicle:                   112,000 miles

| # | Vehicle Description | Mileage | Location | Distance From Loss Vehicle | Price | Adjusted Value |
|---|---|---|---|---|---|---|
| 1 | 2005 CADILLAC DEVILLE BASE 4D SDN 8 4.6NORMAL GAS A 2WD | 52,740 | 72801 | 56 miles | $7,960.00 Sold Price | $8,527.10 |
| 2 | 2005 CADILLAC DEVILLE BASE 4D SDN 8 4.6NORMAL GAS A 2WD | 65,517 | 71913 | 32 miles | $8,479.00 List Price | $8,503.99 |
| 3 | 2005 CADILLAC DEVILLE BASE 4D SDN 8 4.6NORMAL GAS A 2WD | 100,003 | 72901 | 139 miles | $9,295.00 List Price | $9,895.00 |
| 4 | 2005 CADILLAC DEVILLE BASE 4D SDN 8 4.6NORMAL GAS A 2WD | 89,000 | 71203 | 146 miles | $5,980.00 List Price | $5,195.83 |
| | | | | | Base Value: | $8,530.84 |

## Loss Vehicle Adjustments

Loss vehicle:    2005 Cadillac DeVille 4 Door Sedan 4.6L 8 Cyl Gas A FWD

### Condition Adjustments

| Condition Adjustment:    $0.00 | Overall Condition: 3.00-Good    * | Typical Vehicle Condition:  3.00 |
|---|---|---|

Claim # PA00187391-3-31 | Copyright (c) 2011 - Mitchell International, All Rights Reserved. | Page 3

| Category | Condition | | Comments |
|---|---|---|---|
| Interior | 3 Good | | |
| SEATS | 3 Good | | SEATS HAVE NORMAL WEAR. NO RIPS. |
| CARPET | 3 Good | | CARPET HAS NORMAL WEAR. NO HOLES. |
| HEADLINER | 3 Good | | HEADLINER HAS MINIMAL WEAR. NO STAINS. |
| DOORS/INTERIOR PANELS | 3 Good | | INTERIOR TRIM HAS NORMAL WEAR. FEW SCRATCHES |
| DASH/CONSOLE | 3 Good | | DASH HAS MINIMAL WEAR. |
| GLASS | 3 Good | | ALL GLASS INTACT |
| Exterior | | | |
| BODY | 3 Good | | BODY HAS MINIMAL DOOR DINGS. NO RUST |
| PAINT | 3 Good | | PAINT HAS SLIGHT FADING & FEW SCRATCHES. |
| TRIM | 3 Good | | TRIM HAS NORMAL WEAR |
| VINYL/CONVERTIBLE TOP | Typical | | |
| Mechanical | 3 Good | | |
| ENGINE | 3 Good | | NO SEEPAGE. UNABLE TO OPEN HOOD. |
| TRANSMISSION | 3 Good | | NO SEEPAGE. UNABLE TO OPEN HOOD |
| Tire | 3 Good | | ALL TIRES GOOD - 8/32. |

Typical condition reflects a vehicle that is in ready-for-sale condition and reflects normal wear and tear for that vehicle type / age.

Comments:

## Comparable Vehicles

Loss vehicle:    2005 Cadillac DeVille 4 Door Sedan 4.9L 8 Cyl Gas A FWD

Comparable Vehicles

Mitchell WorkCenter
Total Loss

Claim # PA0010739143-01 | Copyright (c) 2011 - Mitchell International. All Rights Reserved. | Page 4

| 1 | 2006 CADILLAC DEVILLE BASE 4D SDN 8 4.6 NORMAL GAS A2WD | | | Sold Price: $7,800.00 |

| | | Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|---|---|
| VIN: | 1G6KD54Y35UXXXXXX | Mileage | 92,073 | 53,749 | -$1,043.03 |
| Stock No: | | Equipment | | | |
| Listing Date: | 03/01/2016 | EQUIPMENT GROUP | No | Yes | -$229.87 |
| ZIP/Postal Code: | 72831 | | | | |
| Distance from Loss Vehicle: | 55 miles | | Total Adjustments: | | -$1,272.90 |
| Source: | FRANCHISE SALE - J.D. POWER AND ASSOCIATES | | Adjusted Price: | | $6,527.10 |

Comparable Vehicle Package Details:
EQUIPMENT GROUP

| 2 | 2005 CADILLAC DEVILLE BASE 4D SDN 8 4.6 NORMAL GAS A2WD | | | List Price: $8,479.00 |

| | | Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|---|---|
| VIN: | 1G6KD54Y65U240943 | Projected Sold Adjustment | | | -$977.00 |
| Stock No: | | Mileage | 92,073 | 65,617 | -$723.97 |
| Listing Date: | 03/14/2016 | Equipment | | | |
| ZIP/Postal Code: | 71913 | EQUIPMENT GROUP | No | Yes | -$222.09 |
| Distance from Loss Vehicle: | 32 miles | SOUND SYSTEM FEATURE, XM SATELLITE RADIO | No | Yes | -$52.95 |
| Source: | DEALER WEB LISTING - VAST.COM | | Total Adjustments: | | -$1,975.01 |
| | ORR HONDA OF HOT SPRINGS | | Adjusted Price: | | $6,503.99 |
| | 4701 CENTRAL AVENUE | | | | |
| | HOT SPRINGS AR 71913 | | | | |
| | 501-525-4565 | | | | |

Comparable Vehicle Package Details:
EQUIPMENT GROUP

Comparable Vehicle Option Details:
SOUND SYSTEM FEATURE, XM SATELLITE RADIO

Claim # PA001E739145-31 | Copyright (c) 2011 - Mitchell International, All Rights Reserved. | Page 5

| 3 | 2006 CADILLAC DEVILLE BASE 4D SDN 8 4.6 NORMAL GAS A2WD | | | List Price: $9,285.00 |
|---|---|---|---|---|

| | | Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|---|---|
| VIN: | 1G6KD57YX5U219558 | Projected Sold Adjustment | | | -$1,071.00 |
| Stock No: | | Mileage | 72,673 | 100,003 | -$370.95 |
| Listing Date: | 02/29/2016 | Equipment | | | |
| ZIP/Postal Code: | 72301 | EQUIPMENT GROUP | No | Yes | -$242.51 |
| Distance from Loss Vehicle: | 139 miles | SOUND SYSTEM, ADVANCED NAVIGATION | No | Yes | -$356.32 |
| Source: | DEALER WEB LISTING - VAST.COM | | | Total Adjustments: | -$1,399.83 |
| | PEARCY AUTO SALES | | | Adjusted Price: | $7,895.37 |
| | 5500 E BROADWAY AVE | | | | |
| | WEST MEMPHIS AR 72301 | | | | |
| | 870-732-2485 | | | | |

Comparable Vehicle Package Details:
EQUIPMENT GROUP

Comparable Vehicle Option Details:
SOUND SYSTEM, ADVANCED NAVIGATION

| 4 | 2005 CADILLAC DEVILLE BASE 4D SDN 8 4.6 NORMAL GAS A2WD | | | List Price: $5,999.00 |
|---|---|---|---|---|

| | | Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|---|---|
| VIN: | 1G6KD54YX5U128582 | Projected Sold Adjustment | | | -$691.00 |
| Stock No: | | Mileage | 92,673 | 98,000 | -$111.12 |
| Listing Date: | 03/18/2016 | | | Total Adjustments: | -$802.12 |
| ZIP/Postal Code: | 71203 | | | Adjusted Price: | $5,196.88 |
| Distance from Loss Vehicle: | 146 miles | | | | |
| Source: | PRIVATE WEB LISTING - CARS.COM | | | | |

## Sub-Model Comparison

| Sub-Model Description | Configuration | Original MSRP |
|---|---|---|
| 2005 Cadillac DeVille | 4 Door Sedan 4.6L 8 Cyl Gas FWD | $46,045.00 |

## Vehicle Valuation Methodology Explanation

WorkCenter Total Loss was built through a joint partnership between J.D. Power and Associates vehicle valuation division Power Information Network (P.I.N.) and Mitchell International, a leading provider of claims processing solutions to private passenger insurers.

WorkCenter Total Loss produces accurate and easy-to-understand vehicle valuations via this five step process:

### Step 1 - Locate Comparable Vehicles

Locate vehicles similar to the loss vehicle in the same market area. WorkCenter Total Loss finds these vehicles in AutoTrader.com, Cars.com, Vast.com and directly from dealerships.

### Step 2 - Adjust Comparable Vehicles

Make adjustments to the prices of the comparable vehicles. The comparable vehicles are identical to the loss vehicle except where adjustments are itemized. There are several types of comparable vehicle adjustments

- Projected Sold Adjustment - an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price).

- Mileage Adjustment - an adjustment for differences in mileage between the comparable vehicle and the loss vehicle.

- Equipment- adjustments for differences in equipment between the comparable vehicle (e.g. equipment packages and options) and the loss vehicle.

### Step 3 - Calculate Base Vehicle Value

The base vehicle value is calculated by averaging the adjusted prices of the comparable vehicles.

### Step 4 - Calculate Loss Vehicle Adjustments

There are four types of loss vehicle adjustments:

- Condition Adjustment:

  Adjustments to account for the condition of the loss vehicle prior to the loss.

- Prior Damage Adjustment:

  Adjustments to account for any prior damage present on the loss vehicle prior to the loss

- After Market Part Adjustment:

  Adjustments to account for any after market parts present on the loss vehicle prior to the loss.

- Refurbishment Adjustment:

  Adjustments to account for any refurbishment performed on the loss vehicle prior to the loss.

### Step 5 - Calculate the Market Value

The Market Value is calculated by applying the loss vehicle adjustments to the base value.

Mitchell WorkCenter
Total Loss